IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DAN'S GOURMET SPOT, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:16-cv-02487 |
| ) | |
| VERSA MARKETING, INC., ) | Judge Sharp |
| ) | Magistrate Judge Newbern |
| Defendant. ) | |
| ) | |
| ) | |

**MEMORANDUM**

Plaintiff Dan's Gourmet Spot, LLC ("Dan's Gourmet") brings claims against Defendant Versa Marketing, Inc., ("Versa") for breach of contract, fraud and misrepresentation, breach of warranty, fraudulent inducement, and violations of the Tennessee Consumer Protection Act, Tenn. Code Ann. §§ 47-18-104(b)(5) and (7). (Docket No. 1-2).

Defendant Versa has filed a Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, for Transfer under 28 U.S.C. § 1404. (Docket No. 7). Plaintiff Dan's Gourmet has filed a Response in Opposition (Docket No. 11), to which Defendant Versa has replied (Docket No. 18). For the reasons stated below, the Court will deny Defendant Versa's Motion.

**BACKGROUND**

The following factual allegations come from the Complaint (Docket No. 1-2), the parties' filings (Docket Nos. 8 & 11), and related declarations (Docket Nos. 9 & 12):

CEO Daniel Stephenson formed Dan's Gourmet out of his Nashville, Tennessee kitchen in 2012 in order to produce and sell gourmet macaroni and cheese dishes. Dan's Gourmet established its local and national business through its "Mac Pacs"—prepackaged containers of

1

macaroni and cheese that promised "all-natural, hassle-free, gourmet flavor" to "comfort[] foodies conveniently." (Docket No. 1-2 at 2, ¶ 9; Docket No. 11 at 2). Dan's Gourmet expanded from Nashville into national supermarket chains by partnering with its first co-packer, which used hot-kettle-based cooking methods and real cheeses to replicate the Mac Pacs on a larger scale. By 2014, Mac Pacs were available in Whole Foods, Kroger, Central Market, Food City, King Kullen, Ingles, Roche Brothers, Sprouts, Kings, Shop-Rite, and Stop and Shop.

In August 2014, Dan's Gourmet initiated contact with and entered into negotiations with Versa, through its CEO Al Goularte, to replace its first co-packer. Versa is a California corporation whose principal place of business is in Fresno, California. It has no property or employees in Tennessee, and neither maintains documents nor advertises in Tennessee.

The negotiations between Versa and Dan's Gourmet included direct communications from Versa to Dan's Gourmet in Tennessee by phone and email. According to Dan's Gourmet, Versa indicated that it would use high quality ingredients and a cold-binding process to replicate the gourmet flavors of Dan's Gourmet's products. When Versa suggested replacing real cheese with dehydrated cheese products, Dan's Gourmet rejected the proposal.

Versa delivered product samples to Dan's Gourmet in Nashville, Tennessee for inspection and comments, presenting them as representative samples of what Versa would produce. After entering into a co-packing contract with Dan's Gourmet, Versa sent more communications, including invoices, to Dan's Gourmet in Tennessee. The manufacturing of the Mac Pacs Versa produced occurred in Harlington, Texas.

Once the Mac Pacs Versa produced reached the market, Dan's Gourmet began receiving complaints in Tennessee from previously loyal customers indicating their disappointment with their purchases. According to customer complaints, their purchases were "totally different," "not

creamy but sort of curdled-looking," "inedible," and had "a glue-like consistency." (Docket No. 1-2 at 5, ¶ 25; Docket No. 11 at 3). Dan's Gourmet concluded that Versa, contrary to its promises about ingredients and production processes it would use, replaced real cheese with dehydrated products when it produced the Mac Pacs. Dan's Gourmet asserts that Versa refused to disclose the recipes it used to produce the Mac Pacs.

In addition to complaining, customers indicated that they would no longer purchase Mac Pacs. After same-store sales dropped by sixty-five percent and Dan's Gourmet lost accounts, Dan's Gourmet filed suit in state court and Versa removed the action to this Court.

## LEGAL STANDARD

Plaintiff bears the burden of establishing that personal jurisdiction exists over the defendant. Youn v. Track, Inc., 324 F.3d 409, 417 (6th Cir. 2003). "'[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleading but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction.'" Carrier Corp. v. Outokumpu Oyj, 673 F.3d 430, 449 (6th Cir. 2012) (citing Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991)). Where, as here, the Court rules on a Rule 12(b)(2) motion to dismiss based only on the parties' written submissions without conducting an evidentiary hearing, the plaintiff's "burden consists of 'a *prima facie* showing that personal jurisdiction exists.'" Schneider v. Hardesty, 669 F.3d 693, 697 (6th Cir. 2012) (citing Serras v. First Tennessee Bank Nat. Ass'n, 875 F.2d 1212, 1214 (6th Cir. 1989)). "Under these circumstances, this court will not consider facts proffered by the defendant that conflict with those offered by the plaintiff . . . and will construe the facts in the light most favorable to the nonmoving party. . . ." Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 887 (6th Cir. 2002) (citations

omitted). Plaintiff's burden is "relatively slight." Air Prod. & Controls, Inc. v. Safetech Int'l, Inc., 503 F.3d 544, 549 (6th Cir. 2007) (internal quotation marks and citation omitted).

## ANALYSIS

I. **Personal Jurisdiction**

In a diversity case such as this, a federal court may exercise personal jurisdiction over a defendant only if (1) the law of the forum state authorizes jurisdiction and (2) exercising jurisdiction meets the requirements of constitutional due process. See Youn, 324 F.3d at 417. Tennessee's long-arm statute allows a Tennessee court to exercise personal jurisdiction over an out-of-state defendant "as to any action or claim for relief arising from: . . . [a]ny tortious act or omission within this state." Tenn. Code Ann. § 20-2-214(a)(2). It further permits the exercise of personal jurisdiction on "[a]ny basis not inconsistent with the constitution of this state or of the United States." Tenn. Code Ann. § 20-2-214(a)(6). As such, the long-arm statute has been interpreted as extending to the limits on personal jurisdiction imposed by the Fourteenth Amendment's Due Process Clause. Bridgeport Music, Inc. v. Still N The Water Pub., 327 F.3d 472, 477 (6th Cir. 2003). Because the two inquiries merge, the Court need only determine whether exercising personal jurisdiction over Defendant Versa accords with federal due process requirements. Id. In order for this Court to exercise jurisdiction constitutionally over Defendant Versa, it "must have 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Youn, 324 F.3d at 417 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

Personal jurisdiction may be either general or specific. See, e.g., Bird v. Parsons, 289 F.3d 865, 873 (6th Cir. 2002). Plaintiff Dan's Gourmet does not argue that this Court has

general jurisdiction over Defendant Versa. Therefore, the Court limits its analysis to whether specific jurisdiction exists.

**A. The Court has specific jurisdiction over Defendant Versa**

Exercising personal jurisdiction over an out-of-state defendant is proper if the Court finds: "(1) [that the defendant has] purposeful[ly] avail[ed] himself 'of the privilege of acting in the forum state or causing a consequence in the forum state,' (2) a 'cause of action ... aris[ing] from activities' in the state, and (3) a 'substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.'" Schneider, 669 F.3d at 701 (quoting Sothern Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968)).

**i.     Purposeful Availment**

The first factor, purposeful availment, is "essential" to finding the existence of personal jurisdiction. Intera Corp. v. Henderson, 428 F.3d 605, 616 (6th Cir. 2005) (internal quotation marks and citation omitted). A defendant purposefully avails himself of a forum "by engaging in activity that should provide 'fair warning' that he may have to defend a lawsuit there." Youn, 324 F.3d at 418 (citing World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). "Purposeful availment is 'something akin to a deliberate undertaking to do or cause an act or thing to be done [in the forum state] or conduct which can be properly regarded as a prime generating cause of the effects resulting in [the forum state], something more than a passive availment of the [forum state's] opportunities.'" Kelly v. Int'l Capital Res., Inc., 231 F.R.D. 502, 510–11 (M.D. Tenn. 2005) (citing Bridgeport Music, Inc. v. Still N the Water Publ'g, 327 F.3d 472, 478 (6th Cir.2003)). "A single act may meet the purposeful availment requirement." Youn, 324 F.3d at 419 (citing cases). However, "random, fortuitous, or attenuated contacts, or . . .

. the unilateral activity of another party or a third person" does not constitute purposeful availment. Id. at 417 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).

Plaintiff Dan's Gourmet argues that Defendant Versa has purposefully availed itself of the privilege of acting in Tennessee. It alleges that Defendant Versa directed phone calls and emails to it in Tennessee. Those communications, which Plaintiff Dan's Gourmet alleges were lies, included statements about the process and ingredients Defendant Versa would use to produce Mac Pacs. In Neal v. Janssen, 270 F.3d 328, 332 (6th Cir. 2001), the Sixth Circuit stated that "[t]he acts of making phone calls and sending facsimiles into the forum, standing alone, may be sufficient to confer jurisdiction on the foreign defendant where the phone calls and faxes form the bases for the action." There, the defendant—a citizen of Belgium—was alleged to have intentionally defrauded plaintiffs when he made phone calls and sent faxes to them in Tennessee lying about the sale of their horse, which defendant had agreed to sell on plaintiffs' behalf. Neal, 270 F.3d at 332. Because the defendant's false representations "had foreseeable effects in Tennessee," "were directed at individuals in Tennessee," and were "at the heart of the lawsuit," the Sixth Circuit determined that the defendant had purposefully availed himself of the privilege of acting in Tennessee.

Here, as in Neal, Defendant Versa's communications were directed to Plaintiff Dan's Gourmet in Tennessee, are at the heart of this suit, and are alleged to have caused Plaintiff Dan's Gourmet's damages in Tennessee. Nevertheless, Defendant Versa argues that it has not purposefully availed itself of the privilege of acting in Tennessee. Although it admits it communicated with Plaintiff Dan's Gourmet by phone and email, it contends that those contacts were "fortuitous" and "attenuated." See Calphalon Corp. v. Rowlette, 228 F.3d 718, 723 (6th Cir. 2000) (citation omitted) ("[Defendant's] phone, mail, and fax contact with [plaintiff] in Ohio

6

and [defendant's] physical visits there occurred solely because [plaintiff] chose to be headquartered in Ohio, not because [defendant] sought to further its business and create 'continuous and substantial' consequences there. . . . Thus, [defendant's] contacts were . . . 'random,' 'fortuitous,' and 'attenuated.'").[1] Defendant Versa argues that it does not have offices, property, or employees in Tennessee and does not advertise or manufacture any goods in Tennessee. Therefore, its phone and email communications—which it asserts were ultimately in response to Plaintiff Dan's Gourmet having initiated contact with it—were directed to Tennessee only because Plaintiff Dan's Gourmet chose to be located there. That argument is unpersuasive.

First, the Court need not weigh heavily—as Defendant Versa urges—the fact that Plaintiff Dan's Gourmet initiated contact with Defendant Versa in California. See Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., 91 F.3d 790, 796 (6th Cir. 1996) (citing Southern Mach., 401 F.2d at 382) ("[T]he dispositive fact is not whether the plaintiff or the defendant initiated the contact between the parties, but whether the defendant ultimately 'chose to deal' with the plaintiff."). More importantly, this is not a case where Defendant Versa was unaware that it was dealing in the forum state or, as it asserts, "performed no action in Tennessee relevant to the issue herein." (Docket No. 18 at 3); See Calphalon, 228 F.3d at 722 (explaining that in another decision, the Sixth Circuit found no purposeful availment because "no facts connected the subject matter or performance of the contract at issue to the forum state.").

---

[1] Defendant Versa also cites Rice v. Karsch, 154 F. App'x 454, 463 (6th Cir. 2005) and Exel Transp. Servs. v. Inter-Ego Sys., 2008 Tenn. App. LEXIS 735, *19-20, 2008 WL 5263627 (Tenn. Ct. App. Dec. 18, 2008) for the proposition that sending emails and making phone calls to the forum do not create a basis for specific jurisdiction. In addition to those cases being distinguishable from the present case, they are not binding on this Court because they are, respectively, an unpublished Sixth Circuit decision and a state court decision. See United States v. Simpson, 520 F.3d 531, 534 (6th Cir. 2008) ("[B]ecause [a Sixth Circuit decision] is an unpublished opinion, the district court was mistaken in its assumption that it was 'obligated' to follow that case."). As such, the Court does not consider them in its analysis.

Here, Plaintiff Dan's Gourmet alleges, and Defendant Versa does not dispute, that Defendant Versa sent sample products to it in Tennessee. Furthermore, Plaintiff Dan's Gourmet alleges that Defendant Versa delivered invoices to it in Tennessee and communicated regularly about the business with the CEO of Plaintiff Dan's Gourmet, who was in Tennessee. Thus, Defendant Versa purposefully sought to do business in Tennessee through its dealings with Plaintiff Dan's Gourmet.

Defendant Versa's argument that Plaintiff Dan's Gourmet sent purchase orders to it in California is unavailing. Sending purchase orders is often the way that commercial transactions get underway and receiving purchase orders in one state does not indicate that a party has not purposefully availed itself of the privilege of acting in another state. Moreover, even if Defendant Versa accepted purchase orders for payment in California, Plaintiff Dan's Gourmet asserts that Defendant Versa received funds from its bank account in Tennessee. See Red Strokes Entm't, Inc. v. Sanderson, No. 3:12-CV-0008, 2012 WL 1514892, at *9 (M.D. Tenn. May 1, 2012) (finding the fact that funds were drawn from plaintiff's bank account in Tennessee helped to demonstrate that defendant's contacts were not fortuitous).

Equally futile is Defendant Versa's argument that the products Plaintiff Dan's Gourmet sold were not limited to, or focused upon, Tennessee markets and consumers. Even if, as Defendant Versa argues, Plaintiff Dan's Gourmet sold its Mac Pacs at certain supermarkets located solely in the northeastern region of the U.S., Plaintiff Dan's Gourmet asserts that its Mac Pacs were available at supermarkets that have locations in Tennessee, such as Whole Foods and Kroger. Furthermore, Plaintiff Dan's Gourmet received complaints from customers in Tennessee. The Court cannot say that no facts connect the subject matter of Defendant Versa's co-packing contract with Plaintiff Dan's Gourmet to Tennessee. In light of the foregoing, the

Court finds that Defendant Versa purposefully availed itself of the privilege of acting in Tennessee.

### ii. Cause of Action Arising from Defendant's Contacts

The second factor requires the Court to consider whether the claims of Plaintiff Dan's Gourmet "arise from" Defendant Versa's contacts with Tennessee. "If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." Bird, 289 F.3d at 875 (internal quotation marks and citation omitted). "This factor does not require that the cause of action formally arise from defendant's contacts with the forum; rather, this criterion requires only that the cause of action, of whatever type, have a substantial connection with the defendant's in-state activities." Id. (internal quotation marks and citation omitted). As such, the Sixth Circuit has characterized this standard as "lenient." See Air Prod., 503 F.3d at 553 (citing Bird, 289 F.3d at 875).

The "arising from" factor is satisfied here. Plaintiff Dan's Gourmet brings claims against Defendant Versa for breach of contract, breach of warranty, fraud and misrepresentation, fraudulent inducement, and violations of the Tennessee Consumer Protection Act. These claims are based on allegations that Defendant Versa made false representations to Plaintiff Dan's Gourmet in Tennessee about the process and ingredients it would use to manufacture the Mac Pacs, including through sending samples to Tennessee that Plaintiff Dan's Gourmet alleges promised a level of quality that Defendant Versa could not and did not deliver. Contrary to Defendant Versa's assertion, it is clear that Defendant Versa's contacts with Tennessee relate to the operative facts of the controversy and have a substantial connection to the asserted causes of action.[2]

---

[2] This case is unlike Cmty. Trust Bancorp, Inc. v. Cmty. Trust Fin. Corp., 692 F.3d 469 (6th Cir. 2012), upon which Defendant Versa relies. There, the Sixth Circuit found that the defendants' activity in the

### iii. Reasonableness of Exercising Jurisdiction

The final factor requires that Defendant Versa's acts or their consequences have a substantial enough connection with Tennessee to make this Court's exercise of jurisdiction over Defendant Versa reasonable. Relevant to the reasonableness inquiry are factors such as "'the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies.'" CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1268 (6th Cir. 1996) (citation omitted).

Defendant Versa argues that all of these factors weigh in its favor. It asserts it would be burdened because it has no presence, documents, or witnesses in Tennessee. Defendant Versa also argues that Tennessee has no greater interest in this dispute than other states because Plaintiff Dan's Gourmet's products are national in scope and were made in Texas after being ordered in California. It claims that Tennessee's only interest in the dispute comes from the fact that Plaintiff Dan's Gourmet is a Tennessee company, which is insufficient. See Others First, Inc. v. Better Bus. Bureau of E. Missouri & S. Illinois, No. 14-CV-12066, 2014 WL 6455662, at *10 (E.D. Mich. Nov. 17, 2014) ("There is simply no interest in [the forum state] aside from the fact that [plaintiff] is a [forum state] nonprofit corporation. It would be unreasonable for the court to exercise jurisdiction over the [defendant] on this basis alone."). Furthermore, Defendant Versa contends that although Plaintiff Dan's Gourmet has an interest in seeking relief in its home state, Plaintiff Dan's Gourmet can obtain equally effective relief in a California court given that its claims are national in scope. It argues that the convenience of Plaintiff Dan's Gourmet does not outweigh Defendant Versa's burden of litigating in Tennessee.

---

forum state was, "at best, tangentially related to" the plaintiff's cause of action. Cmty. Trust Bancorp, 692 F.3d at 472 (6th Cir. 2012). Defendant Versa's contacts with Tennessee are at the heart of this suit.

The Court finds that exercising personal jurisdiction over Defendant Versa is reasonable. First, an inference arises that exercising personal jurisdiction is reasonable when, as here, a court finds both purposeful availment and claims arising from defendant's contacts with the forum state. See Bird, 289 F.3d at 875 (citing CompuServe, 89 F.3d at 1268). Second, the case upon which Defendant Versa relies—Others First— is not binding on this Court and is distinguishable. Unlike here, the Others First court found that the plaintiff had not met its burden of establishing purposeful availment and relatedness between its causes of action and defendant's contacts with the forum state. See Others First, 2014 WL at *9. Third, it is patent that Plaintiff Dan's Gourmet has an interest in obtaining relief in Tennessee and Tennessee has an interest in securing resolution of this suit. See Burger King, 471 U.S. at 473 (citation omitted) ("A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors."). Even assuming another state has an interest in this dispute, that interest is no greater than Tennessee's. Finally, although it may be burdensome for Defendant Versa to defend this suit in Tennessee, the interests of Plaintiff Dan's Gourmet and Tennessee outweigh Defendant Versa's burden.

For the reasons stated above, Plaintiff Dan's Gourmet has satisfied its "relatively slight" burden to make a *prima facie* showing that personal jurisdiction exists.

## II.     Transfer Under 28 U.S.C. § 1404

Alternatively, Defendant Versa moves the Court to transfer this suit to the Eastern District of California pursuant to 28 U.S.C. § 1404. Section 1404(a) provides, in pertinent part, that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]" 28 U.S.C. § 1404(a). Defendant Versa bears the burden of establishing that transfer is appropriate.

See Reese v. CNH Am. LLC, 574 F.3d 315, 320 (6th Cir. 2009) (internal quotation marks and citation omitted) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.").

The Sixth Circuit has suggested that the following are relevant factors for courts to consider when ruling on a motion to transfer: (1) the convenience of the parties and witnesses; (2) the accessibility of evidence; (3) the availability of process to make reluctant witnesses testify; (4) the costs of obtaining willing witnesses; (5) the practical problems of trying the case most expeditiously and inexpensively; and (6) the interests of justice. Id.

Defendant Versa argues that transfer is warranted because Tennessee is not a proper forum under the jurisdictional requirements of due process. Per the discussion above, the Court disagrees. Defendant Versa next contends that the convenience of the parties and witnesses favors transfer because Plaintiff Dan's Gourmet initiated and maintained a relationship with Defendant Versa in California. However, even if it is more convenient for Defendant Versa to litigate in the Eastern District of California, it is more convenient for Plaintiff Dan's Gourmet that this suit proceed in Tennessee. And "[s]ection 1404(a) does not allow for transfer 'if that transfer would only shift the inconvenience from one party to another.'" Pace Indus. Union-Mgmt. Pension Fund v. King Soopers, Inc., No. 3:11-CV-00148, 2011 WL 1481306, at *2 (M.D. Tenn. Apr. 18, 2011) (citation omitted).

A key factor in the transfer analysis is the convenience of non-party witnesses. Smith v. Kyphon, Inc., 578 F. Supp. 2d 954, 963 (M.D. Tenn. 2008). In assessing that factor, this Court—through Judge Wiseman—has stated that relevant considerations include "the number of essential non-party witnesses, their location and the preference of courts for live testimony as opposed to depositions." Id. The Court has also said that "the party seeking the transfer must

clearly specify the essential witnesses to be called and must make a general statement of what their testimony will cover." Id. (citing 15 Charles Alan Wright, et al., *Federal Practice and Procedure* § 3851 (3d ed. 2012)). However, Defendant Versa merely asserts— through the declaration of its CEO—that "[n]o Versa witnesses that could be relevant to this case are in the State of Tennessee." (Docket No. 8-1 at 2, ¶ 8). Because Defendant Versa fails to identify any witnesses, the Court has no basis to conclude that the convenience of witnesses favors transfer to the Eastern District of California. For the same reason, the Court cannot assess whether the availability of compulsory process to ensure witness attendance weighs in favor of transfer as Defendant Versa argues.

Defendant Versa also asserts, without explaining more, that the location of sources of proof supports transfer. Even though the Court may infer that some relevant evidence is in the Eastern District of California given that Defendant Versa's principal place of business is in Fresno, Defendant Versa makes no attempt to describe the content or volume of that evidence. Furthermore, location of documents is generally a neutral factor. See Oakley v. Remy Int'l, Inc., No. 2:09-0107, 2010 WL 503125, at *5 (M.D. Tenn. Feb. 5, 2010) (internal quotation marks omitted) ("The Court recognizes that [i]n the modern era of photocopying, scanning, fax machines, email, overnight delivery services, etc., the location of documents should be considered a neutral factor when deciding to transfer venue under § 1404(a).").

Finally, Defendant Versa argues that the location of the events giving rise to the present dispute is California because Plaintiff Dan's Gourmet initiated the relationship between the parties and sent purchase orders to California. However, for reasons already stated, that argument is without merit. Because the balance of the aforementioned factors is not strongly in favor of Defendant Versa, the Court will not disturb Plaintiff Dan's Gourmet's choice of forum.

## CONCLUSION

For the foregoing reasons, Defendant Versa's Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, for Transfer under 28 U.S.C § 1404 (Docket No. 7) will be denied.

An appropriate order shall be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE